UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANGIE FERREIRA, ) | |
| ) | |
| Plaintiff, ) | CIVIL ACTION NO. |
| ) | |
| v. ) | |
| ) | |
| TOWN OF EAST HARTFORD ) | |
| ) | |
| Defendant. ) | JUNE 28, 2006 |

# COMPLAINT

**COUNT ONE: Gender Discrimination in Violation of Federal Law.**

1. Plaintiff, Angie Ferreira (the "Plaintiff") is a female and a citizen of the United States actually residing in Vernon, Connecticut.

2. Defendant, Town of East Hartford is a Connecticut municipality that acts as the employer of East Hartford municipal police officers and trainees.

This is an action for damages, declaratory and injunctive relief, and attorney's fees brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, as

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

## JURISDICTION AND VENUE

amended by the Civil Right Act of 1991 (Title VII), and the Connecticut Fair Employment Practices Act, C.G.S. S 46a-60a, *et seq*.

3. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §1331 and §1343(3). With respect to the state law claims, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 in that the state law claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

4. Venue in this district is appropriate pursuant to 28 U.S.C. §1391(c), because this is the district in which the cause of action arose.

5. At all times relevant to this complaint, Defendant was the Plaintiff's employer as that term is defined by Title VII, 42 U.S.C. §2000e(b); and the Connecticut Fair Employment Practices Act, §46a-60a, *et seq*.

## FACTS

6. Plaintiff graduated *cum laude* from Western New England College in May 2002, with a degree in criminal justice. Both before and after graduating, she served as a summer police officer in Provincetown, Barnstable and Nantucket, Massachusetts. Additionally, she served as an intern for the Longmeadow Police Department in 2001.

7. In July 2003, Plaintiff was selected as a cadet for the Connecticut Police Corps, a program created, *inter alia*, to recruit college graduates to serve as police officers.

Upon information and belief, the Police Corps was funded by the U.S. Department of Homeland Security and the U.S. Department of Justice ("DOJ").

8. As a prerequisite to her acceptance in the Police Corps Academy, Plaintiff agreed to be assigned to a police department in the State of Connecticut and further agreed to serve four years in her assigned department. If she did not serve four years in her assigned department she may be required to reimburse the Department of Justice $15,000 for the program.

9. In connection with her acceptance, Plaintiff attended the Connecticut Police Corps Academy in Salt Lake City, Utah from July to December 2003. During this time, Plaintiff was informed that she was assigned to work for the East Hartford Police Department operated by the Defendant Town of East Hartford. Three other, male, graduates of the Police Corps Academy were also assigned to East Hartford.

10. In September 2003, Plaintiff was required to ride along with one of Defendant's officers during a weekend break. Plaintiff rode with Officer Tracey O'Connell, who told Plaintiff that she was too pretty to be a police officer in East Hartford.

11. Plaintiff graduated from the Police Corps Academy on December 12, 2003 and began working for Defendant a few days later. As part of her training with Defendant, Plaintiff was assigned several field training officers ("FTO") to supervise her work.

12. From the commencement of Plaintiff's employment with Defendant, Plaintiff was subjected to lascivious comments from other officers, including her FTOs. On

December 16, 2003, she received a telephone call from Officer Keith Ledoux asking her who she was sleeping with in the department. The officer stated that "if I was a little younger, I would be all over you myself."

13.  Plaintiff complained to her primary FTO, Officer Donald Olsen, about this conversation. Officer Olson told her that she had to learn not to listen to people or let it get to her if she wanted to work in the department environment.

14.  In January 2004, Officer Mike Romano tried to kiss Plaintiff in a squad car following a memorial service for a fallen police officer.

15.  In Spring 2004, Officer Daryl Drouin asked Plaintiff to have sex with him. On another occasion, Drouin stood in the doorway of the male locker room in his underwear and called Plaintiff over. Plaintiff yelled, "Oh my God, are you trying to get me in trouble?" Druoin responded, "Yes, you could get in a lot of trouble." Officer Druoin had once been Plaintiff's FTO.

16.  In March 2004, Sergeant Peter Vanek asked Plaintiff to move into an apartment with him in Vernon.

17.  Throughout her employment by Defendant, Plaintiff was subject to comments about her appearance. She was made to feel like a sex object rather than a police officer. These comments were directed at her by female officers as well as male officers.

18.  In or around April 2004, Plaintiff was assigned a female FTO, Sawyer Shaw. Officer Sawyer openly displayed hostility toward Plaintiff. On one occasion in or around

April 22, 2004, Officer Shaw told Plaintiff that she walked and stood "too girly" and ordered Plaintiff to accompany her to the women's locker room, together with another female officer, Danielle Baumgarner. For approximately 30 minutes, Officer Shaw attempted to teach Plaintiff how to walk "like a man." Plaintiff felt humiliated, embarrassed and demeaned.

19. While on patrols, Officer Shaw mockingly referred to Plaintiff as a "cutesy little cop" and demeaned her whenever people waved to her or said hello to her. Officer Shaw's comments were frequently directed toward Plaintiff's appearance and seemed to imply that Plaintiff was too pretty to be a police officer.

20. While on a call to a home in April 2004, Plaintiff approached a doorway in the tactical manner she had been taught at the Police Corps Academy. Officer Shaw derided Plaintiff for being "too timid" and shoved Plaintiff from behind, shouting, "get in there!" Officer Shaw's conduct was demeaning and placed Plaintiff at risk unnecessarily.

21. Plaintiff was reassigned to Officer O'Connell as her FTO. In contrast to Officer Shaw, Officer O'Connell complained that Plaintiff was too aggressive and referred to her in a report as "Robocop." Officer O'Connell made it clear to Plaintiff that he did not want to work with her and was openly hostile towards her. At the completion of her assignment with Plaintiff, Officer O'Connell awarded Plaintiff a "1," the lowest rating, in all eight performance areas he was asked to evaluate.

22. In or around late April 2004, Commander Murphy asked Plaintiff to make a list of areas where she needed help training. Plaintiff made a list and showed it to her

supervisor, Sergeant Rioux. Sergeant Rioux instructed Plaintiff to write down each and every error she had ever made, according to her FTOs.

23. Upon information and belief, other police officers in their probationary period with Defendant, including the three male officers who graduated with Plaintiff from the Connecticut Police Corps Academy and assigned to East Hartford, were not required to make similar lists. Only Plaintiff was singled out for such treatment.

24. On or about June 18, 2004, Plaintiff was contacted to attend a meeting with Police Chief Mark Sirois and Commander Murphy. When Plaintiff inquired as to the purpose of the meeting, she was rebuffed. When Plaintiff attended the meeting, Chief Sirois told her that she had always been a good police officer but that she did not "fit in." Chief Sirois told Plaintiff that she was to have a written letter of resignation on his desk by noon or be terminated by 4 pm.

25. Under duress, Plaintiff submitted a letter of resignation. Because Plaintiff was not employed by Defendant for four years, she is now required to pay $15,000 plus substantial interest to the DOJ. Chief Sirios and Commander Murphy knew Plaintiff would have to reimburse this money if her employment ended before her probationary period ended.

26. Upon information and belief, Defendant has disparaged Plaintiff to other police departments in Connecticut, preventing Plaintiff from gaining employment as a police officer.

27. In or about Summer 2004, the training sergeant for the South Windsor Police Department told Plaintiff not to apply for a job because he heard about what happened to her in East Hartford.

28. In or about January 2005, the Berlin Police Chief refused to allow Plaintiff to take her oral boards even after she scored over 90 (out of 100) on the written boards.

29. Plaintiff has been similarly denied employment by the Town of Glastonbury in January 2005, and Meriden in February 2005, despite being a college graduate and having completed training in the Police Corps Academy.

30. Plaintiff believes that Defendant has interfered with her efforts to secure employment, despite her superior credentials.

31. Defendant, through its agents and employees, discriminated against Plaintiff Plaintiff because of her gender.

32. Defendant's actions violate Title VII of the Civil Rights Act of 1964 as amended.

**COUNT TWO**

1-32. Paragraphs 1-32 of Count One are reiterated as Paragraphs 1-32 of Count Two.

33. Defendant's actions violate the CFEPA.

33. On or about March 21, 2005 Plaintiff filed administrative charges with the Connecticut Commission of Human Rights and Opportunities and with the Equal Employment Opportunities Commission, alleging discrimination based on gender.

34. On or about March 30, 2006 Plaintiff received a Notice of Right to Sue from the Equal Employment Opportunities Commission.

35. The Plaintiff has met all of the administrative prerequisites for bringing this action.

WHEREFORE, Plaintiff claims:

1. Compensatory damages;

2. Back pay and front pay;

3. Punitive damages, attorney's fees and costs; and

4. Such other relief as the Court deems equitable.

PLAINTIFF
ANGIE FERREIRA

By _____
Jeffrey L. Ment, Esq.
CT12299
Jonathan Blake, Esq.
CT22321
Rome McGuigan, P.,C.
One State Street
Hartford, CT 06103
860-549-1000
860-724-3921 (fax)